Ronald W. JAMES, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 03–3313.

United States Court of Appeals,
Federal Circuit.

June 23, 2004.

Randy W. James, James, Totta & Parrish, LLC, of Lee's Summit, MO, for petitioner. Of counsel was Lauren E. Perkins.

Christian J. Moran, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director and Brian M. Simkin, Assistant Director. Of counsel on the brief was Jill Gerstenfield, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Before MAYER, Chief Judge, BRYSON, and LINN, Circuit Judges.

BRYSON, Circuit Judge.

Petitioner Ronald W. James appealed to the Merit Systems Protection Board from a decision of the Office of Personnel Management ("OPM") denying his request to change his post-retirement election of a survivor annuity for his wife. The Board upheld OPM's decision, ruling that OPM did not act unlawfully when, based on the governing statute and regulation, it treated Mr. James's election as irrevocable and therefore rejected his request to change his election. Docket No. CH–0831–02–0574–1–1. We affirm.

I

Mr. James worked for the United States government for approximately 32 years until his retirement in 1983. At the time of his retirement, he was unmarried. At that time he elected to receive an annuity payable only to himself and did not elect a survivor annuity.

On April 24, 2000, Mr. James married. Shortly thereafter, he began to inquire about his right to elect a survivor annuity for his wife. OPM responded to his request in a letter dated August 23, 2000, informing him that if he elected the maximum survivor benefit, his gross monthly

annuity would be reduced from $4,159 to $3,019. The letter also advised him that he could elect a smaller survivor annuity benefit, which would result in a substantially smaller reduction in his own annuity.

Approximately two years later, Mr. James spoke with an OPM retirement benefits specialist who explained that he could elect a survivor annuity of as little as one dollar per month to make his wife eligible for health insurance, and that electing a one dollar per month survivor annuity would not reduce the amount of his lifetime annuity at all. After that conversation, Mr. James requested the forms on which to make a survivor annuity election, and shortly thereafter he received the relevant forms and explanatory materials from OPM. Mr. James asserts that he intended to elect the minimum survivor annuity for his wife in order maximize his lifetime annuity payments while still providing his wife health insurance after his death. On the OPM form, however, Mr. James checked the box for electing a maximum survivor annuity rather than the box for electing a lower survivor annuity. The form itself, as well as OPM's correspondence with Mr. James, indicated that an election could not be changed or revoked once it was received by OPM, and Mr. James signed a statement on his election form acknowledging that he understood the irrevocable nature of the election.

Although Mr. James signed his form on March 25, 2002, he did not realize his mistake until April 27, 2002, when he received correspondence from OPM calculating the reduction in his lifetime annuity. At that time, he sent a letter to OPM explaining that he had made a mistake and seeking to withdraw his application and substitute a new election of a survivor annuity of one dollar per month for his wife. OPM treated his letter as a request for reconsideration, and in a May 21, 2002, letter denied his request to revoke or change his election. OPM cited 5 U.S.C. § 8339(k)(2)(A), which states that the post-retirement election of a survivor annuity is "irrevocabl[e]" after it is received by OPM. Mr. James then appealed OPM's decision to the Board.

The administrative judge who was assigned to the case upheld OPM's decision. The administrative judge noted that the pertinent statute provides that an election of the type made by Mr. James is irrevocable and held that OPM's regulation providing that an election is irrevocable once it is received by OPM embodied a reasonable interpretation of the statute. The administrative judge also rejected Mr. James's due process and equal protection claims on the grounds that the government officials involved were not acting arbitrarily or in a discriminatory way but were merely following established statutory and regulatory provisions that are neutral on their face.

The full Board denied Mr. James's petition for review. In a footnote, however, the Board stated that Mr. James would be entitled to have his full retirement benefits restored without any reduction for a survivor annuity if Mr. James's wife filed an irrevocable waiver declining to accept all or part of the survivor annuity. Shortly thereafter, Mr. James's representative contacted OPM regarding the possibility of a waiver by Mrs. James, and in August 2003 OPM acknowledged that Mr. James's annuity would be reinstated if Mrs. James filed a proper waiver. On August 28, 2003, Mr. James's representative filed a declaration by Mrs. James purporting to waive her rights to a survivor annuity greater than one dollar per month. OPM did not take action in response to that

declaration, but instead sent a form on October 31, 2003, which Mrs. James executed on November 3, 2003. OPM confirmed her waiver in a December 1, 2003, letter and represented that Mr. James's full lifetime annuity would be reinstated as of January 1, 2004.

Mr. James now petitions for review by this court. He argues that he should have been permitted to change his election in April 2002 and that, as a result, he should be entitled to a payment in the amount by which his annuity was reduced between June 2002 and December 2003.

## II

Mr. James asserts three grounds on which he claims he is entitled to relief: (1) from early in the appeal process Mrs. James expressed her support for Mr. James's appeal, and OPM should have reinstated his annuity once her position was made clear; (2) OPM had no authority to prohibit Mr. James from changing his survivor election, and OPM's refusal to permit that change violated his due process rights; and (3) the original election was invalid because it was the product of a mutual mistake by the parties.

■ 1. Regarding Mrs. James's waiver, the Board held in *Shelley v. Office of Personnel Management,* 88 M.S.P.R. 224, 227 (2001), that if a former spouse irrevocably waived her survivor annuity under 5 U.S.C. § 8345(d), her ex-husband's full annuity would be reinstated. *See also Mulroy v. Office of Pers. Mgmt.,* 92 M.S.P.R.

404, 410 (2002). The Board in this case applied the same rationale in stating that Mr. James's current wife could do the same. Section 8345(d), however, requires that such a waiver be signed and filed with OPM. Although Mrs. James could have filed such a waiver with OPM at any time, her intervention in Mr. James's appeal and her testimony that she supported her husband's reinstatement of his annuity were not sufficient to satisfy the statutory requirement of section 8345(d).

■ As for Mr. James's claim for reimbursement for the time period between August 28, 2003, when Mrs. James sent OPM her initial waiver document, and October 31, 2003, when OPM sent Mrs. James an official waiver form that she promptly executed, the events that transpired during that period all occurred after the Board's decision in this case and were not before the Board for adjudication. For that reason, they are also not before us on this petition for review. In order to seek recovery of any funds that might be due based on the period after August 28, 2003, when Mr. James asserts that his wife made an effective waiver, he will have to initiate a new proceeding by making a request to OPM for those funds.[1]

2. The statute allowing a retiree to make a post-retirement election of a survivor annuity for a new spouse is 5 U.S.C. § 8339(k)(2)(A), which states that a retiree may "irrevocably elect" such an annuity "in a signed writing received in the Office [of Personnel Management]." OPM has promulgated several regulations imple-

---

1. The government suggests that the Board's decisions holding that a spouse may irrevocably waive the right to an annuity following an irrevocable election by an annuitant are "questionable." However, in light of the fact that the government has not contested Mr. James's right to reinstatement of his annuity following his wife's waiver of her right to a survivor's annuity, we need not decide in this case whether the Board's construction of 5 U.S.C. § 8345(d) is correct.

menting subsection 8339(k). *See* 5 C.F.R. §§ 831.622, 831.631–32.

■ The regulation that applies to post-retirement elections provides that those elections become irrevocable when they are received by OPM. 5 C.F.R. § 831.631(b)(4)(i). Mr. James argues that section 831.622 of the regulations, which pertains to changes to elections after final adjudication, permits him 30 days after the date of his first regular payment in which to modify his election. That regulation, however, appears to apply only to elections made at the time of retirement, as it refers to changes made within 30 days of the "first regular monthly payment" of the retiree's annuity, which is defined by 5 C.F.R. § 831.603 to mean "the first annuity check ... after OPM has initially adjudicated the regular rate of annuity ... and has paid the annuity accrued since the time of retirement." OPM's conclusion that it is section 831.631(b)(4)(i) that applies to post-retirement elections is entitled to great deference, as it constitutes the agency's interpretation of its own regulations, which must be sustained unless the interpretation is plainly erroneous or is inconsistent with the text of the regulations. *See Krizman v. Merit Sys. Prot. Bd.,* 77 F.3d 434, 439 (Fed.Cir.1996).

■ Because OPM applied the pertinent regulation by its terms, the regulation justifies OPM's conduct unless the regulation was inconsistent with or an unreasonable interpretation of the governing statute. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The statute, however, merely states that the retiree may "irrevocably elect" a survivor annuity and does not expressly state when the election becomes irrevocable. Under *Chevron,* OPM's choice of receipt of the election by OPM as the point at which the election becomes irrevocable is a reasonable interpretation of the statute on a point as to which the statute does not explicitly speak.

■ Regarding Mr. James's argument that OPM's decision violated due process, requirements of strict adherence to filing and timing rules are ubiquitous in our legal system. To hold that a rule such as OPM's is unconstitutional would subject many statutes of limitations and other filing requirements or deadlines to constitutional challenge. Mr. James was given clear notice in the pertinent statute that his election was irrevocable, and OPM's correspondence with him made clear that his election could not be changed once it was received by OPM. The agency's refusal to allow him to change the election in April 2002 thus was not arbitrary or discriminatory.

■ 3. Borrowing a concept from the law of contracts, Mr. James argues that his election was invalid because it was the product of "mutual mistake." The applicable statute and regulation, however, do not support a "mutual mistake" exception to the provisions that make annuity elections irrevocable. The regulation plainly indicates that the election is made in a signed writing and is final once received by OPM. Where, as here, the nature of the election is clear, there is no provision for altering it on the ground that it was the product of carelessness or inattention.

Moreover, to introduce the possibility of contradicting the text of an election with parol evidence of conversations between an annuitant and representatives of OPM would introduce great uncertainty into the election process. The Supreme Court has

rejected arguments that noncompliance with valid regulations can be overlooked in such situations, on facts considerably more compelling than those in this case. *See Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). Thus, because Mr. James admittedly completed and signed the election form, and submitted it to OPM, he is bound by its contents.

Finally, we note that although Mr. James emphasizes the harshness of OPM's rule as applied to an annuitant who makes an inadvertent error in filling out an election form, the harshness of the rule as applied in Mr. James's case was considerably mitigated by the Board's ruling that Mr. James's wife was entitled to waive her right to a survivor annuity, which would result in the reinstatement of a full annuity for Mr. James. Indeed, Mr. James resumed receiving the full amount of his monthly benefits after Mrs. James took that step following the proceedings before the Board.

Each party shall bear its own costs for this appeal.

*AFFIRMED.*